IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
TINA MARIE PINION,               )
                                 )
            Plaintiff,           )
                                 )
      v.                         )     1:10CV58
                                 )
CAROLYN W. COLVIN,[1]            )
Commissioner of Social Security, )
                                 )
            Defendant.           )
```

**<u>MEMORANDUM OPINION AND ORDER</u>**

THOMAS D. SCHROEDER, District Judge.

Plaintiff Tina Pinion brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)) (the "Act"), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for benefits under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

## I.   BACKGROUND

Pinion filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on February 28,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).


2006, alleging a disability onset date of April 14, 2003. (Tr. at 102-06, 108-10.)[2] Her DIB application was denied both initially (id. at 59-62) and upon reconsideration (id. at 66-68).[3] Thereafter, she requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Id. at 70, 73-74.) Pinion, her attorney, and an impartial vocational expert ("VE") subsequently attended a hearing on October 20, 2008. (Id. at 9.) Following this proceeding, the ALJ determined that Pinion was not disabled within the meaning of the Act (id. at 14) and, on November 25, 2009, the Appeals Council denied her request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (id. at 1-5).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. The claimant meets the insured status requirements of the Social Security Act through March 30, 2010.

2. The claimant has not engaged in substantial gainful activity since April 14, 2003, the alleged onset date (20 CFR 404.1571 *et seq.*).

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer (Doc. 7).

[3] Pinion did not challenge the Commissioner's initial finding that she was ineligible for SSI payments due to income and living arrangements. (See Tr. at 53-58.) Therefore, only Pinion's DIB claim remained at subsequent levels of review.

3. The claimant has the following severe impairments: cervicalgia and impairment of the left upper extremity (20 CFR 404.1521 *et seq.*)

. . . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

. . . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit for six hours, and stand/walk for six hours in an eight hour day. The claimant can frequently, but not constantly reach or handle. She cannot climb ladders. The claimant can occasionally climb stairs, balance, stoop, crouch, kneel or crawl, but should avoid concentrated exposure to hazard[s] such as moving machinery, or unprotected heights. The claimant is limited to routine, repetitive work. She does not have visual or communicative limitations.

(Id. at 11-12.)

Based on the VE's testimony, the ALJ found that Pinion was able to return to her past relevant work as a cashier. (Id. at 14.) Accordingly, he determined that she was not under a "disability," as defined in the Act, from April 14, 2003, through the date of the decision. (Id.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social

Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted) (setting out the standards for judicial review).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

4

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner or the] ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation marks omitted). The issue before this court, therefore, "is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

5

continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id. The claimant bears the burden as to the first four steps, but the Government bears the burden as to the fifth step.

In undertaking this sequential evaluation process, the five steps are considered in turn, although a finding adverse to the claimant at either of the first two steps forecloses a disability designation and ends the inquiry. In this regard, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working,

---

[4] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

If a claimant carries his or her burden at each of the first two steps and also meets her burden at step three of establishing an impairment that meets of equals an impairment listed in the regulations, "the claimant is disabled," and there is no need to proceed to step four or five. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then the analysis continues and the ALJ must assess the claimant's residual functional capacity ("RFC"). Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However,

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

7

if the claimant establishes an inability to return to prior work based on that RFC, the analysis proceeds to the fifth step, which shifts the burden of proof and "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work, considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

**III. ANALYSIS**

In the present case, the ALJ found that Pinion had not engaged in "substantial gainful activity" since April 14, 2003, the onset date applied in the decision. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Pinion suffered from the following severe impairments: cervicalgia and impairment of the left upper extremity. (Tr. at 11.) The ALJ found at step three that these impairments did not meet or equal a disability

8

listing. Accordingly, he assessed Pinion's RFC and determined that she could perform light work with additional postural and environmental limitations. He also found her limited to routine and repetitive tasks with only occasional public contact. (Id. at 12, 14.) Based on this determination, the ALJ determined at step four of the analysis that Pinion could return to her past relevant work as a cashier and therefore was not disabled. (Id. at 14.)

Pinion challenges the ALJ's RFC determination on two grounds. First, she alleges that the ALJ erred by failing to evaluate her claims from her amended alleged onset date of December 20, 2005. (Doc. 10 at 3.) Second, she claims that "[i]t was error for the [ALJ] not to mention or consider the claimant's Mental Disorders of Depression and Anxiety in determining whether or not these additional severe impairments, combined with the cervicalgia and impairment of the left upper extremity would have met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Id. at 4.) Defendant contends otherwise and urges that substantial evidence supports the determination that Pinion was not disabled. (Doc. 15 at 12.)

**A. Onset Date**

Pinion correctly asserts that, at her hearing, her counsel

9

voiced a desire to amend the alleged onset date of disability from April 14, 2003, to December 20, 2005. She then claims that the ALJ's failure to adopt the amended date in his decision without explanation constitutes grounds for reversal. (Doc. 10 at 3.) Plaintiff is mistaken. As set out in Social Security Ruling 83-20, an ALJ must make an onset date determination on the basis of a multi-factor analysis, including not only the individual's allegation, but also her relevant work history and the medical evidence. "[T]he individual's allegation [of the onset date] . . . is significant in determining onset *only* if it is consistent with the severity of the condition(s) shown by the medical evidence." SSR 83-20, 1983 WL 31249, at *1 (emphasis added). Here, as the ALJ clearly sets out in his opinion, the medical evidence conflicted with the amended onset date proposed by Pinion.

Pinion's initial disability application alleged an onset date of April 14, 2003. On that day, she sustained injuries to her neck and left upper extremity in an 18-wheeler crash. (Tr. at 18-19.) Her injuries required two surgeries and left her with residual numbness and pain such that her orthopedist, Dr. Michael Lauffenburger, released her with a permanent restriction to sedentary work on December 20, 2004. (Id. at 19, 414.) Subsequent to her injuries, Pinion worked on two occasions, once

from December 2003 to May of 2004, when her employment ended due to contract expiration, and again from September to November of 2005, when she alleges that her physical condition forced her to stop working. (Id. at 20.) Notably, the latter date of work stoppage roughly corresponds with the birth date of Pinion's son, and the record reflects that she was understandably taking less medication, and therefore experiencing more pain, during this time period. (Id. at 13, 218, 222, 223.) Also around this time, Dr. Hans Bengston completed a medical source statement indicating that Pinion could sit/stand for less than two hours in an 8-hour work day and could lift no weight due to her cervicalgia and ulnar neuropathy. (Id. at 13, 302-06.)

At the hearing, Pinion's counsel argued that the date of Dr. Bengston's evaluation, December 20, 2005, should be used as the onset date of Plaintiff's disability, rather than the date of her actual injury. Counsel specifically admitted that "the evidence, as a whole, shows that, even after [Pinion's April 14, 2003] onset date, there's evidence in the record that she could continue to perform at least sedentary work until about November or December of [20]05." (Id. at 22.) This evidence included the sedentary work restrictions proposed by Dr. Lauffenburger in 2004 along with Pinion's work attempts in 2003 and 2004. Nevertheless, counsel argued that the record shows that Pinion's

11

condition later worsened to the point that her impairments rendered her disabled as of December 20, 2005. (Id.)

As a preliminary matter, the court notes that, "for disabilities of traumatic origin," such as Pinion's, "onset is the day of the injury if the individual is thereafter . . . expected to be unable to engage in substantial gainful activity . . . for a continuous period of at least 12 months." SSR 83-20, 1983 WL 31249, at *2. Pinion fails to address why this definition should not apply in her case. Even setting this significant problem aside, the ALJ was under no obligation to adopt Pinion's amended onset date in light of the inconsistencies between that date and the medical evidence, and the administrative decision reflects his reasons for declining to do so. The decision includes analysis of the relevant medical evidence both before and after December 20, 2005, and specifically discounts Dr. Bengston's 2005 assessment and Pinion's contemporaneous complaints of worsening condition in light of subsequent treatment notes. In particular, the decision notes that the 2005 assessment was "based on only three months of treatment in 2003" and was inconsistent with Dr. Bengston's later treatment notes showing improvement in Pinion's symptoms with medication. (Tr. at 13, 302, 315, 323, 325, 329.) The records cited in the decision also reflect Pinion's

12

ability to "participate in her activities of daily living with minimal to moderate challenges secondary to pain" after December 20, 2005. (Tr. at 325.) Pinion provides no other objective medical evidence to support her subjective complaints of worsening pain after this date, and none is apparent in the record. In short, the ALJ's decision demonstrates that substantial evidence supported a finding of "not disabled" from both the original period of disability alleged by Pinion and from the new date alleged at her hearing. Accordingly, the court finds no error.[6]

## B. Additional Severe Impairments

Pinion next argues that "[i]t was error for the [ALJ] not to mention or consider the claimant's Mental Disorders of Depression and Anxiety in determining whether or not these additional severe impairments, combined with the cervicalgia and impairment of the left upper extremity, would have met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Doc. 10 at 4.) This challenge identifies two potential issues: (1) whether Pinion's alleged depression and/or anxiety qualified as additional severe

---

[6] Moreover, any "error in the alleged onset of disability is not itself a basis for remand, unless the Plaintiff can show that it caused her prejudice, either alone or in combination with other errors." Ehrob v. Comm'r of Soc. Sec., Civil No. 09-13732, 2011 WL 977514, at *6 (E.D. Mich. Mar. 17, 2011) (unpublished).

impairments at step two of the SEP, and, (2) if so, whether her impairments, in combination, met or medically equaled a listed impairment at step three.

As Defendant admits, "the ALJ's decision does not include any analysis or discussion regarding depression and anxiety." (Doc. 15 at 10.) However, Defendant also correctly notes that the record contains scant evidence of these conditions, let alone sufficient evidence to categorize Pinion's mental conditions as severe. (Id.) An impairment is "not severe" if it constitutes only "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)); see SSR 96-3p, 61 Fed. Reg. 34469; see also 20 C.F.R. § 404.1520(c). Moreover, the claimant bears the burden of showing severity at the second step of the SEP, see Hunter, 993 F.2d at 35 ("Through the fourth step, the burden of production and proof is on the claimant."), and must support any showing of severity with relevant medical evidence, Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003).

In the present case, Pinion never alleged any mental impairment in her Adult Disability Reports, and the third-party

function report completed by her husband indicated no mental issues other than Pinion's failure to handle stress very well. (Tr. at 133-36, 137-47, 149-51, 152-58, 159-66.) When contacted by a Disability Determination Services caseworker in May 2006, Pinion stated that her mental symptoms were completely controlled with Effexor and caused no problems with concentration or daily functioning. She further indicated that her depressive symptoms stemmed from her physical problems and that physical problems alone kept her out of work. (Id. at 148.)

The only record evidence contrary to the above is Pinion's December 20, 2005 assessment by Dr. Bengston, who opined that Pinion suffered from depression and anxiety which contributed to her symptom severity and functional limitations. (Id. at 303.) As stated in section A above, the ALJ gave Dr. Bengston's assessment little weight in light of its inconsistency with his own treatment notes and the medical evidence as a whole. Although they are not discussed in the decision, Dr. Bengston's inconsistencies as to Pinion's mental status are particularly glaring. Dr. Bengston's notes from both April 20, 2005, and July 19, 2005, indicate a significant improvement in Pinion's mood since the initiation of Effexor. (Id. at 216, 217.) Moreover, his later notes show that her mood and affect were

15

appropriate and that she suffered from "no noted disturbance of attention span or concentration." (Id. at 323, 325, 327.) No treatment notes support the severity level opined in Dr. Bengston's December 2005 assessment, and the remainder of Pinion's medical records reflect, at most, a self-reported history of situational depression, or, more often, a complete absence of psychological issues. (See, e.g., id. at 246, 279, 321, 338.) The substantial evidence in the case thus fails to support categorizing Pinion's mental impairments as "severe" at step two.

As a final matter, Pinion offers no support for her step three contention that her impairments met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In fact, she never indicates which listing or listings she claims to meet. In his decision, the ALJ considered whether Pinion's cervicalgia and left upper extremity impairments met the requirements of Listing 1.04 and found that "[t]he medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (Id. at 11.) Pinion identifies no evidence to refute this finding, nor does she explain how her (ultimately flawed) argument regarding her alleged mental impairments would

16

alter the ALJ's listing analysis. As such, the court finds that substantial evidence supports the ALJ's determination at step three.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Pinion's Motion to Reverse the Decision of the Commissioner (Doc. 9) is DENIED, that Defendant's Motion for Judgment on the Pleadings (Doc. 14) is GRANTED, and that this action is DISMISSED WITH PREJUDICE.

                                /s/   Thomas D. Schroeder
                              United States District Judge

December 31, 2013